Good morning, Your Honors. You may proceed. This is a case of an attorney that was dismissed for political discrimination reasons. Essentially, on this appeal, we have relied on defense statements of uncontested facts to support our arguments. First of all, the District Court ignored completely the adverse inference rule when it decided that the unhealthy test was met, given the fact that Attorney Reyes lacked the qualifications for the reclassification of the position that he was actually given. The missing documents in his file were not actually discovered through the whole process of discovery. Ms. Romani, as I recall the record, there was a specification 9.5, which required that the person selected into the position have five years of prior contract, legal contract management, and that your client did not have such experience as of the time he was appointed. Ms. Romani, as I recall the record, there was a specification 9.5, which required that the person selected into the position have five years of prior contract, legal contract management, and that your client did not have such experience as of the time he was appointed. All right. So the fact that his former bosses of the same party were willing to certify that I don't think gets you beyond the hoop. What evidence is there that he did, in fact, have that experience? He did have it, a part-time experience with one contractor. But aside from that, he met the qualifications. What is the evidence that he met the qualifications? When he was legal counsel to the governor, he was dealing with contract supervision. And if I may, Your Honor, it's not only 9.5, it's also the job description of the contracting director that talks about experience related to the contracting of goods and services. It doesn't even have to be directly involving the contracting. And I think that what the court did was essentially sided with the interpretation of the current administration human resources director saying, well, he had to have direct contracting experience, when the language, if you can see it from I think it's around page 525 of the appendix, talks about related. And that's one aspect of the qualifications. Is this Judge Fuste? Excuse me? Is it Judge Fuste? Judge Fuste. Judge Fuste said they would have applied the same criteria in the same way, regardless of the underlying political party of the person in the job. And we know that because there was a similar review, regardless of party membership, performed on other employees. Yeah, that's another piece of argument that we have, Your Honor. Judge Fuste confuses two different investigations. One involved the validity of the internal job postings involving like 232 employees. And this one only involved three employees conducted by different consultants, which actually in the appellee's brief, we get some confusion as to that. Were the three employees each or any of them of different political party? The three of them were popular democratic parties. All three. All three. Not NPP. No. And it's a very limited universe. So when Judge Fuste goes beyond the Mount Healthy to actually assess the level of political discrimination, he goes back to this audit that involves internal job postings and not reclassifications, which is what is at stake in this case. So essentially he's relying, actually it's like a super personal board. The district court is assuming that in the sense that he's deferring to the administrator's, the current administrator's interpretation. He's talking about a reorganization that there's no evidence that was reversed. For example, the appellant was in the same position as the position that was reorganized prior to this new administration until 2010. Yes, but then the new administration comes in and they notice that it is the practice in Puerto Rico usually of the prevailing political party that controls the governorship to put as many of their own people into agencies. And of disappearing documents too. Yeah, and so, you know, every four years we get another few hundred of these cases. I think this court is an expert on this subject nationally. I know. But the new administration says we want to go back to a merit-based system. And so we're going to compare the experience of all employees against what the job criteria are. That's what they did. First, the reversal of the reorganization was not created. You don't find any record, no minutes in the board of directors that when the new administrator Alvarez came on board, the board of directors approved that reversal. Second, that nonexistent minutes were not, that reversal was not notified to the appellant. The appellant remained in the same position, Your Honor, until 2010. If this was so imminent, and we are having a board of directors reverse all of the reorganization of 2008, why don't implement it and notify the appellant of that reorganization? He was not even notified. He was responding to the head of the legal division just as the reorganization was approved prior to 2008. Help me with one thing, because on the facts, I know the judge below found it difficult to work through the summary judgment materials that have been filed. But one of the ones was paragraph 39 of the defendant's statement of facts said that none of the requirements of Article 9.5 were complied with in your client's case. And as I read the statement of material facts, the sole opposition was, quote, defendant's number 39 is denied. Plaintiff complied with Article 9.5, and it was certified by Mr. Carlos Riaz-Nazario. And then we're cross-referenced to number 11, and all number 11 says is that he was certified. So as I read that, were I the district court judge, I'd say you're denying it, but the only basis for denying that your client lacked the qualifications is that he was certified by the prior administration. Isn't that the way a statement of material facts works? Well, Your Honor, the problem is here is who do you believe? It's not who you believe. You mentioned in response to Chief Judge Lentz a resume and then someone else's, but none of that was put before the trial judge in the one vehicle that he had to figure out this record. But it is in the record, actually. But that doesn't make any difference, does it, under Rule 56? If you don't put in a statement of material facts, it's effectively out of the record. And actually, I definitely assume responsibility for all those mistakes, and that's why I opted to actually, you know, I am the supervisor and I should be responsible. But I do, I do then, what I did was I planned all the strategy for this appeal was actually to rely exclusively on the defendants' SUF. If you see, that's essentially it, and what we're trying to say is even accepting as true all defendants' SUF. If you see that, that's in the brief, who do you believe? Okay, so now you've lost me. If I accept as true, I don't need to ask who I believe. I've just accepted as true their statement that your client lacked the basic requirements. No, we're denying it because at the time that he was reclassified, the authority, the Human Resources Department, certified that he met the requirements. And the documents that are in the custody of the agency are gone. So the adverse inference rule is that they should be the ones that produce the documents that justify that. It doesn't, the adverse inference rule doesn't help you where if it were true, your client would be the first person on the planet to know it and be able to say it in two seconds. He said. I had this experience, I had that. There's depositions, they're there. But not in the statement of appeal. Maybe not in that particular statement of fact, Your Honor, you're correct. Thank you. Thank you. Good morning. Counsel Damaris Ortiz-Gonzalez on behalf of State Insurance Fund. Your Honor, I would like to start taking this court to page 1643 of the appendix of the appeal. And that page is the requirements of the position for director of contracting of goods and services, that is the position of Roberto Reyes. It states clearly that he needed five years of experience in contracting of goods and services. And that's not what was said before. In this case, Your Honor, it's very clear that plaintiff or appellant is trying to rest his case only on the allegation that some documents were missing. However, those documents are all part of this appeal. Counsel, did you hear what your opponent just said? Yes, Your Honor. All right. She said that if you look at this guy's record, you look at his statements in his deposition, you look at the certification from the prior administration that he met the requirements, that calls into dispute whether or not he met the requirement. All right? That's what she just told us. Yes, but that's not... Well, that's her argument right now. Okay, yes. Okay. And then she and Judge Chioda just had an exchange about what was put before the district court. All right, so why is the district court correct? Well, Your Honor, the thing is that the state insurance fund was very clear in the record as to why... But she doesn't dispute the five-year requirement. No, I don't dispute the fact, yes. The dispute is over whether bias infected the decision that he was not, did not meet that qualification. She says she has facts. Well, but where are those facts? The record is orphaned of those facts. And the state insurance fund was clear in the record about the fact that he was not, he did not meet with the requirements at the moment of the classification. The documents that were supposedly missing are in the record, and those documents, like the Certificate of Eligibility, for example, that is the August 29th of 2008 letter. That is not a certification at all. It's just a very general letter where Alexis Villalmosa says, I believe that Roberto Reyes and the other two employees who were also reclassified comply with the requirements, and that's it. There's no explanation in detail as to which are the specific requirements for each one of those positions and why is that these three employees complied with those requirements. Why was the second round of review done that focused only on three employees? Because those, well, it was just one investigation. One investigation with two different results. One result was that 232 employees were appointed through internal job postings, and the other result is that only three employees were reclassified without complying with the requirements of the regulations of the state insurance fund. I thought the second inquiry actually came after the first inquiry was done. The investigations were done at the same time, but with two different results. Only three people were dismissed because of the reclassifications because only three people were reclassified. There's nothing in the record that states that there are other people, that there are other employees who were also reclassified but were not dismissed. So you're saying a large number of employees were surveyed, looked through the record to see how they got their position, and it was found there were only three. Yes. In fact, the state insurance fund inspected more than 3,800 personnel files. And they only found three who met certain criteria. They only found three, yes, three employees that were reclassified and was not in accordance to the regulations. And then they didn't automatically fire those three at that point of reclassification. No. They then had another procedure that they were more in-depth in response to. They had the procedure, and then they submitted, served them the letters of intent, and the whole process, the due process was going on, happened. Okay. Thank you. Good morning. May it please the Court. Susana Pena-Garican on behalf of Individual Capacity Defendants. I would like to address first the issue of investigations. There was one investigation, one audit regarding all personal transactions and records. However, during that investigation, it came about that there were some managerial employees, Federation of Managerial Associations, that were challenging these three reclassifications. Among them, plaintiff's reclassification. I must clarify that these three people that were reclassified and that these managerial employees were challenging before the Board of Appeals were not all PDP affiliates. Indeed, in the record, plaintiff's clarifies that in Appendix 1439 to 1440, he alleges that he doesn't know Carmen Alonso, whether Carmen Alonso's political affiliation was. He knows Maritza Vazquez was a PDP, but not Carmen Alonso. I must also stress the fact that these managerial employees that were challenging these three classifications were all, most of them, were all PDP affiliates. So they were during the administration, during the administration, and they were challenging these reclassifications. That's in Appendix 1441 to 1446. And you can also find that in 1432. Also, the investigation, as I said, was prompted by these managerial employees. So the investigation applied to both MPP and PDP. The whole investigation implied that the whole, all of them, all personal transactions were. Yes, I understood that. But then the special look that gets taken at three employees. That special look came because of that challenge from managerial employees. While this audit was taking place, the notice came to the management that there were challenges to these reclassifications. And then they took a special look to that, and they delegated the task to an external human resources management consultant, Jose Miguel or Jose Alvarez. And he took under his wing to go through this investigation and issue a report as to each of the three reclassifications. Ms. Romany just told us they had different experts do it, and it wasn't a common expert. You're telling us it was a common expert for all three? For the three of them, yes. It was the external consultant. However, the internal investigation was taken care of by the human resources department. Help me with the numbers. I think I'm missing the middle one. There's an overall look of something like 3,000 employees. 835 employees. Okay, 835. 3,835. Okay. And then how many get identified as there being some issue about their classification? Three. And as to issues with the internal job posting announcements, 232. So there were 232 nullifications or annulments regarding the fact that they were appointed through internal job announcements. And there were three that were annulled because they failed to comply with Article 9.5 of the employee manual. But all of them failed to comply with the merit principle, basically. That was the end result. So you're saying it would have ended at that point, and they would have been out, but they challenged? They were challenged by managerial employees. Managerial employees challenged these three classifications before actually filing administrative claims against the state insurance fund. And during that administrative process, the agency said, hey, we're going to have to look at this, too, because besides looking at the whole ballpark figure, we have a problem. We have a bunch of people that are challenging these reclassifications. Let's look at it. And most of the people that challenged the reclassifications were PDPs, and that's in the record in the pages that I cited. And some of them won. I'm not sure if that's still going on. However, I must clarify that among the three that were reclassified, two plaintiffs did not seek administrative appeal. But the other two are still in the process of that, but one of them went to state court and the other one went to federal court, and their claims were dismissed with prejudice. One was case 10-1609, and it was dismissed as to all claims with prejudice, and there's another local claim, too, in Puerto Rico court that was dismissed. I wanted to go through the letter, but I don't have any more time. If you don't have any more questions, I submit the case on the brief. Thank you. Your Honors, I think that the two investigations have to be really clarified. There was one audit that was concerning this white entity assessment that involved the internal joke postings, whether those were valid or not. That ended up with dismissals and demotions. Letters went out around May 2010, most of them. Then this second look at the three employees that were reclassified because of the reorganization not at the last minute, as Judge Fusque points out, that was approved by the Board of Directors early in 2008 and for which there are minutes, proper minutes, not as the reversal of Ms. Alvarez's account. In this one, the reclassification involved only these three PPD members. So what we are asking this court is to discard Judge Fusque's rationale that the beyond unhealthy requirement of political discrimination was not even proven because this was a white entity, there was no distinctions between political party affiliations, et cetera, et cetera. Whether or not there was a reorganization, it is certainly under these circumstances not irrational for the state to say, look, we are going to take a look at whether people actually met job criteria. What evidence do you have that the decision to undertake that review was undertaken with political discrimination purposes in mind? The circumstantial evidence, the record is full of that in terms of all the processes, no protocols, even the same head of the human resources that was affected by it, it was involved in it. The attorney who reviewed actually the record for my client ended up replacing him. It was full of irregularities that you can see on the record. So there is circumstantial evidence that you can make inferences. Unfortunately, as you know, for plaintiffs, there is rarely the smoking gun evidence. And there has been a smoking gun in these cases. There is not one here. I just want to clarify that it's very confusing from the court's decision to assess the nature of the investigation, which is actually part of the, as you know, when the political administrations change, a platoon descends to really get rid of the prior employees that belong to earlier administrations. It happens every four years, as you're very aware of. Thank you. Any more questions? No. Thank you so much.